IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANN BORGHEIINCK, | ) | CASE NO. 8:13CV322 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA BOLTE, individually and in her official capacity, KAREN DUNHAM, individually and in her official capacity, LYNELLE HOMOLKA, individually and in her official capacity, JIM HELGOTH, individually and in his official capacity, D.L. HAHN, individually and in his official capacity, JAN PLACKE, individually and in her official capacity, KEVIN CAMPBELL, individually and in his official capacity, and THERESA GOOD, individually and in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 25). For the reasons discussed below, the Motion will be granted.

**FACTS**

The parties' briefs (Filing Nos. 26, 31, 36) and Indexes of Evidence (Filing Nos. 27, 32, 33, 34, 37) reveal that there is no genuine dispute as to the following material facts:

Plaintiff Ann Borgheiinck ("Borgheiinck") was employed by the Merrick County Treasurer's Office from March 6, 2000, until January 17, 2013, when her employment was terminated by Defendant Patricia Bolte ("Bolte"), Merrick County Deputy Treasurer. At the time of the termination, Defendant Karen Dunham ("Dunham") was the Merrick County Treasurer, with supervisory authority over Borgheiinck, but Dunham was on leave on January 17, 2013. In Dunham's absence, Bolte had supervisory authority over

Borgheiinck.  Bolte did not give Borgheiinck a reason for her termination on January 17, 2013.  Dunham supported Bolte's decision to terminate Borgheiinck.

On January 22, 2013, Borgheiinck gave Bolte a written request for a meeting to discuss the termination; and on January 23, 2013, Borgheiink filed a written grievance protesting the termination.[1]  On January 29, 2013, Bolte sent a letter to Borgheiinck stating that Borgheiinck's discharge was "due to excessive profanity and disrespectful behavior." (Filing No. 27-2 at ECF 17.)  Bolte stated that on January 17, 2013, she observed that Borgheiinck became frustrated when trying to balance a cash drawer and, while in the presence of the public, Borgheiinck repeatedly stated she was "pissed off." (*Id*.) Bolte also stated that Borgheiinck had been previously warned about such unprofessional conduct. (*Id*.)  In an undated addendum to her grievance, Borgheiinck responded to Bolte's allegations, generally denying them, but acknowledging that she did state in public that she was "pissed off."  (*Id*. at ECF 16.)

A Grievance Board composed of Defendants Jan Placke ("Placke"), Jim Helgoth ("Helgoth"), D.L. Hahn ("Hahn"), Kevin Campbell ("Campbell") and Theresa Good ("Good") reviewed Borgheiinck's grievance at meetings on March 7 and 12, 2013.  Borgheiink was not permitted to participate in the meetings.  The Board issued a written decision to Borgheiinck on March 12, 2013, stating that a formal hearing was not required, and denying her any relief.

Defendant Lynelle Homolka was the Merrick County Attorney who advised the other Defendants during times relevant to this action.

---

[1] The written grievance is dated January 20, 2013.  (Filing No. 27-2 at ECF 12-16.)

2

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotations omitted). In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id*. at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotations omitted).

## DISCUSSION

Borgheiinck's Amended Complaint sets out three theories of recovery: First, she contends that she had a liberty interest in her good name, and the Defendants refused to provide her with a meaningful opportunity to clear her name, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. Second, she alleges that personnel grievance procedures adopted by the Merrick County Board of Supervisors, pursuant to Neb. Rev. Stat. § 23-2534, gave her a

4

property interest in her continued employment, and the Defendants deprived her of that property interest without due process in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. Third, she alleges that Defendants Bolte, Homolka and Dunham deprived her of due process under Neb. Rev. Stat. § 20-148 and Article I, section 3, of the Constitution of the State of Nebraska.

The Defendants contend that they are entitled to qualified immunity from suit in their individual capacities, and that summary judgment should be entered in their favor in both their personal and official capacities as a matter of law.

**I. Due Process Right Relative to Liberty Interest in Name-Clearing**

Even at-will employees may have a right to a hearing in connection with discharge if the employer "creates and disseminates a false and defamatory impression about the at-will employee in connection with the discharge." *Speer v. City of Wynne, Ark.*, 276 F.3d 980, 984 (8th Cir. 2002). To prevail on such a liberty-interest claim, Borgheiinck "must demonstrate: '(1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status.'" *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009) (citation omitted) (quoting *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007)). To recover for the lack of a post-termination name-clearing hearing, Borgheiinck also "must prove [she] sought one before litigation." *Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006).

Borgheiinck's claim fails, because she has not "identified any admissible evidence containing a sufficiently stigmatizing statement." *Crews v. Monarch Fire Protection Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014).

> "For a defamatory statement to be actionable under § 1983, it must go beyond 'alleging conduct [by the plaintiff] that fails to meet professional standards'" and instead "must 'damage[ ] a person's standing in the community or foreclose[ ] a person's freedom to take advantage of other employment opportunities.'" *Jones* [*v. McNeese*, 746 F.3d 887 (8th Cir.2014)] at 898 (alterations in original) (quoting *Raposa v. Meade Sch. Dist.* 46–1, 790 F.2d 1349, 1354 (8th Cir.1986)). "The stigma must be significant, and it usually involves allegations of dishonesty, immorality, racism, or a similar character-demeaning charge." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 802 (8th Cir.2004). We have "distinguished claims of general misconduct or unsatisfactory performance from claims involving direct dishonesty, immorality, criminality or racism." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 477 (8th Cir.2008) (emphasis added).

*Id.*

Here, Borgheiinck has not alleged, let alone demonstrated with admissible evidence, any stigma sufficient to deprive her of a liberty interest. In Borgheiinck's brief in opposition to Defendants' Motion for Summary Judgment, she offered no response whatsoever to the Defendants' arguments regarding this claim. Accordingly, summary judgment will be granted in favor of the Defendants with respect to Borgheiinck's claim based on her alleged deprivation of a liberty interest in the clearing of her name.

## II.  Due Process Right Relative to Property Interest in Employment

"To prevail on her due process property interest claim, [a plaintiff] must prove defendants deprived her of 'a property right in continued employment' without due process." *Floyd-Gimon v. Univ. of Arkansas for Med. Scis. ex rel. Bd. of Trustees of Univ. of Arkansas*, 716 F.3d 1141, 1146 (8th Cir. 2013) (quoting *Cleveland Bd. of Educ. v.*

6

*Loudermill*, 470 U.S. 532, 538 (1985)).  "Whether [a plaintiff has] such a right depends on state law." *Id*. (citing *Eddings v. City of Hot Springs, Ark*., 323 F.3d 596, 601 (8th Cir. 2003)).  "[S]tate law or some other independent source, . . . amounting to mutually explicit understandings, must establish such an entitlement." *Thompson v. Adams*, 268 F.3d 609, 611 (8th Cir. 2001) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); and quoting *Perry v. Sindermann*, 408 U.S. 593, 603 (1972)) (internal quotation marks and citations omitted).

"Nebraska is an employment-at-will state, where, unless constitutionally, statutorily, or contractually prohibited, an employer may terminate an at-will employee at any time with or without reason, without incurring liability." *Dossett v. First State Bank*, 627 N.W.2d 131, 137 (Neb. 2001).

Neb. Rev. Stat. §23-2534 (Reissue 2012) provides that "[t]he county board of any county with a population of less than one hundred fifty thousand inhabitants *may* adopt policies and procedures pursuant to sections 23-2534 to 23-2544 which concern employee . . . discharge . . . ."  (emphasis added).  The Court takes judicial notice of the fact that Merrick County has a population of less than one hundred fifty thousand inhabitants.

Neb. Rev. Stat. § 23-2537 (Reissue 2012) provides that "[a] personnel policy board *may* be created by resolution of the county board."  (emphasis added.)  Neb. Rev. Stat. § 23-2538 (Reissue 2012) sets out the powers and duties of such personnel policy boards, including "(1) To review and make recommendations to the county board on the personnel rules and regulations . . . prior to the approval by the county board; . . . [and] (5) To review

7

any grievance or case of disciplinary action of a classified service employee[2] when appealed by such employee in accordance with approved personnel rules and regulations and issue a determination that is binding on all parties concerned . . . ." Neb. Rev. Stat. § 23-2541 (Reissue 2012) provides that such "rules and regulations . . . *may* provide: . . . (14) For establishment of a plan for resolving employee grievances and complaints . . . ." (emphasis added).

Defendants assert, and Borgheiinck does not deny, that there is no record of the Merrick County Board of Commissioners ever establishing a personnel policy board pursuant to Neb. Rev. Stat. § 23-2437, and no record indicating that any personnel policy board ever reviewed or recommended personnel rules and regulations to the Merrick County Board of Commissioners or otherwise exercised any powers described in Neb. Rev. Stat. § 23-2538. (*See* Defendants' Brief, Filing No. 26 at ECF 3; Plaintiff's Brief, Filing No. 31 at ECF 3.)

Borgheiinck contends that it is immaterial whether or not the Merrick County Board of Supervisors followed the statutory scheme set out in Neb. Rev. Stat. 23-2534, *et seq*., because that scheme is permissive. Borgheiinck relies on the Merrick County Employee Handbook, the terms of which she contends altered her status from that of an at-will employee to that of an employee with a property interest in her continued employment. She notes that the Nebraska Supreme Court has held that "[a]n employee's at-will status can be modified by contractual terms that may be created by employee handbooks and

---

[2] Classified and unclassified service employees are defined in Neb. Rev. Stat. § 23-2536 (Reissue 2012). It appears undisputed that Borgheiinck was at all relevant times a classified service employee.

8

oral representations." *Hambersky v. Nicholson Supply Co.*, 517 N.W.2d 382, 385 (Neb. 1994).

In *Hambersky*, the Nebraska Supreme Court also said: "In an action for breach of a contract of employment, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract." *Id*. The *Hambersky* court reiterated its earlier guidance regarding employment contracts created through employee handbook provisions:

> [I]f the handbook language constitutes an offer definite in form which is communicated to the offeree, and the offer is accepted and consideration furnished for its enforceability, the handbook provision becomes part of the employment contract.... In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation.... The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

*Id.* (quoting *Johnston v. Panhandle Co-op Assn.*, 408 N.W.2d 261, 266 (Neb. 1987)).

Here, Borgheiinck relies on an employee handbook (the Handbook) issued by the Merrick County Board. (Filing No. 27-2 at 35, *et seq.*)[3]  On its first page of text, the Handbook states:

> [T]he Merrick County Employee Handbook does not constitute a contract between the Board and County employees.  The Board retains the right to modify or abolish these policies, procedures, and benefits and reserves the right to adopt new policies, procedures, and benefits.
> . . . .

---

[3]  The Defendants' Index of Evidence includes a complete copy of the Handbook, dated 2009. The Plaintiff's Index of Evidence includes "excerpts" from the Handbook, dated 2011 (Filing No. 32 at 3 et seq.)  There does not appear to be any difference in the two versions of the Handbook, material to this action.

> Nothing contained in this handbook or in any other statement of County philosophy . . . should be taken as constituting an express or implied promise of continuing employment. The County, like the employee, is free to terminate the employment relationship at any time for any lawful reason, or no reason at all as we are an "at-will" employer. Also please understand that no one has the authority to alter this employment-at-will status through an oral employment contract on behalf of the County, and only the County Board can enter into a written employment contract that changes the employment relationship from employment at will.

(*Id*. at 38.)

On the last page of the Handbook, the employee is required to sign and date a receipt.

The receipt includes the following statement:

> I understand and agree that my employment is terminable at will so that both the County and I remain free to choose to end our work relationship for any lawful reason or no reason. Similarly, so County official has the authority to enter into an oral employment contract, modifying this employment-at-will relationship, and only the County Board can enter into a written employment contract changing the employment-at-will relationship.
> . . . .
> I understand that nothing in this handbook in any way creates an express or implied contract of employment between the County and me but rather is intended to foster a better working atmosphere while the employer/employee relationship exists.

(*Id*. at 77.)

Under the heading "Employee Conduct," the Handbook also states:

> [T]he County reserves the right to investigate, make judgments, and take appropriate disciplinary action in each individual incident. The level of severity of any infraction and the disciplinary action to be taken is solely at the County's discretion.

(*Id*. at 61.)

Under the heading "Discipline and Discharge," the Handbook also states:

> At any time, an employee has the right to terminate employment with the County, for any reason or for no reason, and the County retains the same right to terminate an employee as we are an "at-will" employer.

10

(*Id.* at 62.)

Borgheiinck relies on two provisions in the Handbook, suggesting that they create an implied contract sufficient to constitute a property interest in her continued employment, at least pending progressive discipline:

> Department heads may dismiss any employee under their supervision by delivering a written statement to the employee concerned.  The written communication will indicate the reasons for the action, any relevant supporting evidence or a summary thereof, and the date the dismissal is effective.  Prior to the termination taking effect, the employee will be provided with an opportunity to present facts and/or explain circumstances, which the employee feels, will refute the charges.

(*Id*. at 63.)

> Employees who feel the county has violated a written policy(ies) or procedure(s) may request to meet with their immediate supervisor within four (4) working days from the date the alleged violation took place.  The immediate supervisor shall review the employee's concerns and advise the employee, in writing, of his/her decision regarding the grievance, normally within (5) working days of receipt of the grievance.  If the employee is not satisfied with the immediate supervisor's response, the employee may appeal the grievance to the Grievance Board within five (5) working days from the date of the immediate supervisor's response.

(*Id.* at 43.)

Borgheiinck notes that she received no pre-termination hearing and had no opportunity to refute charges prior to her termination.  Borgheiinck also notes that Bolte did not meet with her or respond in writing to her request for a meeting within the time frame suggested in the Handbook's grievance procedure.

The Handbook sets out a two-step grievance procedure to address employee grievances, including terminations.  (*Id*. at 42-43.)  The first step provides for a meeting between the employee and the immediate supervisor, followed by a written response from the supervisor.  (*Id*. at 43.)  The second step provides for a written appeal to a five-person

grievance board. The Handbook notes: "The Grievance Board may meet with the employee to discuss the grievance but must respond to the grievance, in writing, normally within five (5) working days from the date of receipt of the grievance. The Grievance Board's decision is final." (*Id.*)

Assuming, without deciding, that one or more of the Defendants failed to comply with all aspects of the termination and grievance procedure set out in the Handbook, this Court concludes that the Handbook did not give Borgheiinck any property interest in her continued employment. "[P]rocedures alone [do not] create a substantive property right." *Bituminous Materials, Inc. v. Rice County, Minn.*, 126 F.3d 1068, 1070 (8th Cir. 1997) (quoting *Stow v. Cochran*, 819 F.2d 864, 866 (8th Cir.1987)) (internal quotations omitted).

### III. Due Process Rights Pursuant to Neb. Rev. Stat. § 20-148 and Article I, section 3, of the Constitution of the State of Nebraska

Neb. Const. art. I, § 3, states: "No person shall be deprived of life, liberty, or property, without due process of law . . . ." Neb. Rev. Stat. § 20-148 provides, in pertinent part:

> Any person or company . . . except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

Section 20-148 "is a procedural statute which does not create any new substantive rights." *Goolsby v. Anderson*, 549 N.W.2d 153, 157 (Neb. 1996). Through § 20-148, the Nebraska Legislature "created a cause of action similar to [42 U.S.C.] § 1983 . . . ." *McKenna v. Julian*, 763 N.W.2d 384 (Neb. 2009). Unlike § 1983, however, § 20-148

explicitly excludes actions against political subdivisions based on alleged constitutional violations. *Id*. at 391.

Borgheiinck's actions brought pursuant to Neb. Const. art. I, § 3, and Neb. Rev. Stat. § 20-148, against the Defendants in their official capacities are barred by sovereign immunity, the plain language of § 20-148, and for the reasons set out in sections I and II above. Her actions against the Defendants in their individual capacities also fail for the reasons described in sections I and II above.

## CONCLUSION

Construing all evidence in a light most favorable to Borgheiinck, she has failed to demonstrate the existence of a genuine dispute as to any material fact that would permit any of her three theories of recovery to proceed to trial. Accordingly, it is unnecessary for the Court to address the Defendants' arguments on the question of qualified immunity, and summary judgment will be entered in favor of the Defendants.

Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment (Filing No. 25) is granted;

2. The Plaintiff's Amended Complaint (Filing No. 9) is dismissed, with prejudice; and

3. A separate Judgment will be entered.

DATED this 17th day of December, 2014.

                    BY THE COURT:

                    s/Laurie Smith Camp
                    Chief United States District Judge